## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIA QUAGLIARELLO** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION** |
| | : | **NO. 09-4870** |
| **v.** | : | |
| | : | |
| **OFFICER JOSHUA DEWEES** | : | |
| **BADGE #242, C/O CHESTER** | : | |
| **POLICE DEPT.** | : | |
| **Defendants** | : | **JURY TRIAL DEMANDED** |

---

## ORDER

**AND NOW**, upon this ___ day of January, 2011, it is hereby **ORDERED** and **DECREED** that Defendants' First Motion in Limine to Preclude the Testimony of Plaintiff's expert, Walter Signorelli, is hereby Granted.   Mr. Signorelli is precluded from presenting evidence, via testimony or otherwise as follows:

1. Any testimony concerning the legal standard of "probable cause."

2. Any testimony concerning "unreasonable, unnecessary, reasonable or necessary."

3. Any testimony concerning "indifference" by the City of Chester.

4. Any testimony of "unlawful treatment" of the Plaintiff.

5. Any testimony that the Officer did not justify a "reasonable belief."

6. That Officer Dewees' explanations are "illusory and irrational."

7. That Officer Dewees stopped Plaintiff for going through an "alleged" red signal.

8. Officer Dewees violated "his own in effect directive."

9. Assuming that Officer Dewees "failure to report that his weapon was drawn was by design" to hide same from his superiors.

10.     The two day suspension of Officer Dewees was an inadequate penalty.

11.     That Plaintiff's actions did not amount to "public annoyance."

12.     The Officer should have known that he "could not shoot the Plaintiff."

13.     The Officer did not articulate any facts or observations to "support this kind of conjecture."

14.     Any reference to the <u>Turner v. Chester</u> and <u>Reese v. Chester</u> lawsuits or factual scenarios as they are not factually or legally similar to the case before this Court and would involve trying a case within a case.

BY THE COURT:

_____

HONORABLE MICHAEL M. BAYLSON
U.S.D.C. ED of Pa.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JULIA QUAGLIARELLO** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION** |
| | : | **NO. 09-4870** |
| **v.** | : | |
| | : | |
| **OFFICER JOSHUA DEWEES** | : | |
| **BADGE #242, C/O CHESTER** | : | |
| **POLICE DEPT.** | : | |
| **Defendants** | : | **JURY TRIAL DEMANDED** |

---

**DEFENDANTS CITY OF CHESTER AND POLICE OFFICER JOSHUA DEWEES'**
**FIRST MOTION IN LIMINE TO PRECLUDE OPINION**
**TESTIMONY OF WALTER SIGNORELLI, PLAINTIFF'S POLICE EXPERT**

Defendants City of Chester and Officer Joshua Dewees file this Motion in Limine to preclude the testimony of Walter Signorelli as well as all evidence and questions, references and testimony, direct or indirect, at trial and in *voir dire* relating to said report.

1.      The instant case arises from an incident that took place on January 25, 2009 at approximately 9:45 a.m. in the City of Chester, Delaware County, Pennsylvania.   The Plaintiff violated the PA Vehicle Code and attempted to flee Officer Dewees who had his lights and siren on for over eight blocks in a residential, elementary school and Widener University neighborhood.

2.      Plaintiff did not stop or pull her vehicle to the side of the road at Officer Dewees' signal, for over ten blocks.

3.      When Plaintiff finally stopped, Officer Dewees suspecting something was wrong and for officer safety, exited his vehicle and pointed his service weapon at the Plaintiff's car.

4.      This lawsuit is based upon Plaintiff's arrest and subsequent prosecution for

violations of the Vehicle Code and the PA Crimes Code.

5.     The case allegations in Plaintiff's Complaint are an arrest without probable cause, an excessive force claim pursuant to 42 U.S.C. §1983 as well as a <u>Monell</u> claim.

6.     Plaintiff has identified Walter Signorelli as her police liability expert.

7.     The reasons more fully set forth in the Memorandum of Law, which is attached hereto and incorporated by reference, Plaintiff should be precluded from introducing any evidence from Plaintiff's liability expert, Walter Signorelli, at time of trial.

**WHEREFORE**, Defendants, respectfully request that this Honorable Court preclude any evidence from Plaintiff's liability expert, Walter Signorelli, at time of trial.

Respectfully submitted,

DEASEY, MAHONEY, VALENTINI & NORTH, LTD.

Date: January 18, 2011          By: _____

THOMAS C. GALLAGHER, ESQUIRE
Attorney ID No. 27156
103 Chesley Drive, Suite 101
Media, PA 19063
(610) 892-2732 Phone
(610) 892-2926 Fax
tcgallagher@dmvlawfirm.com
**Attorney for Defendants**
**City of Chester and Officer Joshua Dewees**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JULIA QUAGLIARELLO** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION** |
| | : | **NO. 09-4870** |
| **v.** | : | |
| | : | |
| **OFFICER JOSHUA DEWEES** | : | |
| **BADGE #242, C/O CHESTER** | : | |
| **POLICE DEPT.** | : | |
| **Defendants** | : | **JURY TRIAL DEMANDED** |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**CITY OF CHESTER AND OFFICER JOSHUA DEWEES'**
**FIRST MOTION IN LIMINE TO PRECLUDE OPINION**
**TESTIMONY OF WALTER SIGNORELLI,**
**PLAINTIFF'S POLICE EXPERT, IN WHOLE OR IN PART**

Defendants City of Chester and Officer Joshua Dewees (herein, "Moving Defendants"), by and through their attorneys, Deasey, Mahoney, Valentini & North, Ltd., moves this Court for an Order precluding the testimony of Walter Signorelli, Plaintiff's Police Expert and in support thereof, avers as follows:

**I.     FACTUAL BACKGROUND**

The matter before this Court is Defendants City of Chester and Officer Dewees' Motion in Limine to Preclude Testimony of Walter Signorelli, Plaintiff's Police Expert, in whole or in part. Moving Defendants request the preclusion of certain testimony and corresponding report, in accordance with the Pennsylvania and Federal Rules of Evidence.

## II.     ARGUMENT

Question:

Should this Court preclude Walter Signorelli from presenting testimony as set forth herein as it is impermissible as a matter of law and in violation of the Pennsylvania and Federal Rules of Evidence?

Answer:

Yes.

## III.     STATEMENT OF FACTS

This lawsuit arises out of an incident that took place on January 25, 2009 between the intersections of 22nd and Melrose and 14th and Chestnut Streets in the City of Chester, Delaware County, Pennsylvania.   Officer Joshua Dewees of the City of Chester Police Department observed the Plaintiff turn left through a steady red signal at 22nd and Melrose.   As he approached the Plaintiff driving a Honda Pilot at 21st and Melrose, Officer Dewees activated the overhead police lights on his marked City of Chester vehicle.   When Ms. Quagliarello did not pull over immediately, the Officer gave her a blast on his "pull over horn."   Ms. Quagliarello continued to stop and proceed through four stop signs without stopping or acknowledging Officer Dewees who was directly behind her with his overhead lights on, his "pull over horn" and his siren, which had been activated. Ms. Quagliarello stopped at 14th and Melrose at a traffic signal, then turned right and went another 800 feet before finally pulling over in a bus cut out at 14th and Chestnut Streets on the campus of Widener University.

Because of Officer safety and because Officer Dewees had no idea what the problem was that Ms. Quagliarello did not stop her vehicle for over ten blocks (approximately 3000 feet), he exited his vehicle with his service pistol pointing at the vehicle.   Upon ascertaining that there was no one in the back of the car and that Ms. Quagliarello did not have a weapon, he directed

2

her to step out of the car, holstered his service pistol and placed her under arrest for Fleeing and

Evading an officer, Disorderly Conduct as a summary offense for causing a hazard or physically

offensive condition by any act, which serves as no legitimate purpose of the actor in that she

continued to drive through a residential neighborhood past an elementary school and onto a

university campus in total disregard for the signals from Officer Dewees to pull over. He also

charged her with the initial traffic violation that precipitated the pursuit.

To support Ms. Quagliarello's claims against the City of Chester and Officer Dewees, she

has retained Walter Signorelli, a police liability expert. Mr. Signorelli issued three separate

reports on July 31, 2010, October 1, 2010 and October 18, 2010. A copy of these reports is

attached and marked as Exhibits "A", "B" and "C".

## IV.    LEGAL ARGUMENT

### A.    Mr. Signorelli's Report Embraces the Ultimate Legal Issues.

Mr. Signorelli's report embraces the ultimate legal issue in the case. He makes

conclusory allegations that the police did not have probable cause to stop and arrest Plaintiff, that

the police used unreasonable and unnecessary force; that the actions of the Officer were not

reasonable or necessary; that the City of Chester was indifferent to the Plaintiff and as such

caused her to sustain unlawful treatment. Mr. Signorelli also opines that the Plaintiff's actions

did not amount to "public annoyance." Such conclusions embrace the ultimate issue in the case

and intrude upon the jury's role to determine the ultimate issue.

Federal Rule of Evidence 704(a) requires the exclusion of expert reports that attempt to

"embrace the ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). This Court

has held that such expert testimony must be excluded because it invades the province of the jury.

Haberen v. Kaupp Vascular Surgeons Ltd. Defined Benefit Plan and Trust Agreement, et al., 812

F. Supp. 1376 (E.D. Pa. 1992). Furthermore, the conclusions drawn by Mr. Signorelli ultimately

instruct the jury as to what result should be reached.  This Court in <u>Burger v. Mays,</u> 176 F.R.D.

153 (E.D. Pa. 1997), precluded Plaintiff's expert in excessive force case from testifying that

"Defendant unreasonably seized the Plaintiff or that his actions were unreasonable under the

circumstances." <u>Id</u>. at 156-157.

Throughout Mr. Signorelli's reports, there are various reference to legal opinions and factual

conclusion.  Examples include as follows:

- "Police Officers are trained that to make a lawful arrest they must have <u>probable cause</u>, and they are trained that probable cause consists of facts and circumstances that would lead a reasonable person to conclude that the person to be arrested committed, was committing, or was about to commit a crime." (Exhibit "A", page 3, paragraph 1).

- "The Officer has <u>not alleged facts that would meet that standard</u> (probable cause)." (Exhibit "A", page 3, paragraph 1).

- "The fact that the Officer may have been annoyed by her defense of her actions does not amount to <u>public annoyance</u>." (Exhibit "A", page 3, paragraph 1).

- "Furthermore, it was <u>unreasonable</u> and <u>unnecessary</u> to approach her with his gun drawn in a threatening manner, and his action was in violation of proper police procedures and practices." (Exhibit "A", page 3, paragraph 3).

- "Police Officers are trained that they may use force only when <u>necessary</u> and <u>reasonable</u>." (Exhibit "A", page 3, paragraph 3).

- "The Officer did not describe any threatening moves on the part of the Plaintiff that would have justified a <u>reasonable belief</u> that she threaten the Officer." (Exhibit "A", page 3, paragraph 3).

- "In my opinion, it was <u>unreasonable</u> and <u>unnecessary</u> for the Officer to approach the Plaintiff with his gun drawn in a threatening manner, and his action was a violation of

proper police procedure and practices, and a violation of the Chester Police Department directive." (Exhibit "B", page 1, paragraph 3).

- "Police Officer is trained that they may use force only when <u>necessary</u> and <u>reasonable</u>." (Exhibit "B", page 2, paragraph 1).

- "The Officer did not describe any threatening moves on the part of the Plaintiff that would have justified a <u>reasonable belief</u> that she threatened the Officer or anyone else." (Exhibit "B", page 2, paragraph 1).

- "Again, it is my opinion that his conduct was <u>unreasonable</u> and <u>unnecessary</u>." (Exhibit "B", page 2, paragraph 1).

- "The Officer's conduct violated proper police procedures, practices and <u>his own in effect directive</u>." (Exhibit "B", page 2, paragraph 1).

- "The testimony of the Officer, which clearly <u>indicated a lack of knowledge</u> of police procedures <u>regarding the differences between an arrest and a stop and when the Miranda warnings</u> are required is further evidence that the Officer is either unqualified to be a Police Officer or the Chester Police Department has failed to properly train the Officer, etc." (Exhibit "B", page 2, paragraph 1).

- "The <u>improper</u> civilian complaint investigative procedures employed by the Department set a tone of supervisory <u>indifference</u> to the proper performance of police duties." (Exhibit "C", page 3, paragraph 1).

- "This failure lead to the <u>unlawful</u> treatment of the Plaintiff, Ms. Quagliarello." (Exhibit "C", page 3, paragraph 1).

Mr. Signorelli's report is replete with legal opinions. Experts may not testify of opinions that amount to legal opinions.  See, <u>Commonwealth v. Neil</u>, 618 A.2d 438 (Pa. Super. 1992). Furthermore, a properly qualified non-scientific expert may not offer an opinion as to an ultimate

legal issue because to permit this type of evidence would subvert the jury's function to decide the disputed facts and issues after being properly instructed as to the law by the Court.  <u>Jackson v. City of Pittsburgh</u>, 2010 U.S. Dist. LEXIS 82965, at *28 (W.D. Pa. 2010), citing <u>Whitmill v. City of Philadelphia</u>, 29 F. Supp.2d 241, 246 (E.D. Pa. 1998).

The question of whether a police officer's use of force is reasonable is "quintessentially a matter of applying the common sense and the community sense of the jury to a particular set of facts… It would interfere inappropriately with that judgment process… to allow expert testimony as to what reasonableness is[.]."  <u>Burger v. Mays</u>, 176 F.R.D. 153, 157, citing <u>Wells v. Smith</u>, 778 F. Supp. 7, 8 (D. Md. 1991).

Mr. Signorelli should be precluded from testifying as to whether probable cause existed for the arrest and detention of Ms. Quagliarello and the issuance of any charges.  This is a question of fact for the jury.  Mr. Signorelli is precluded from setting forth any opinion as to the existence of "probable cause" or illegal opinion of probable cause.

As to Signorelli's opinion concerning the Officer not having sufficient facts to arrest for probable cause, while Mr. Signorelli is a former police officer, he is not qualified to engage in the analysis of the applicable law.  Only the Court may tell a jury what the law is.

Mr. Signorelli is precluded from testifying that the City's failure to train its police caused a violation of the victim's constitutional rights and that this failure lead to the unlawful treatment of the Plaintiff.  <u>Roberson v. City of Philadelphia</u>, 2001 U.S. Dist. LEXIS 216 (E.D. of Pa. 2001) at *17, citing <u>Schieber v. City of Philadelphia</u>, 2000 U.S. Dist. LEXIS 17952 at *31 (E.D. of Pa. December 13, 2000).

Mr. Signorelli's expert report and the proposed testimony concerning the above legal conclusions should be excluded at trial.

B.      **Credibility of Witnesses.**

Federal Rule of Evidence 702, *Testimony by Experts* provides as follows:

> If scientific, technical or other specialized knowledge will
> assist the trier of fact to understand the evidence or to determine a
> fact in issue, a witness qualified as an expert by knowledge, skill,
> experience, training or education, may testify thereto in the form of
> an opinion or otherwise. Fed. R. Evid. 702.

However, an expert may not testify to opinions that amount to comments about a witness'
credibility.   See Commonwealth v. Seese, 517 A.2d 920 (Pa. 1986).   Jackson v. City of
Pittsburgh, supra. at *43.   (The Police Liability Expert is not permitted to make credibility
assessments of the witnesses, including the truthfulness of their respective testimony or
statements). See Whitmill, 29 F. Supp. 2d at 246-247.

Credibility assessments are left solely for the jury to decide.   Jackson, supra, at * 43.
Throughout Mr. Signorelli's Reports, there are various references to the credibility of parties in
this matter.  Examples include as follows:

- "In this case, the alleged traffic signal violation occurred at East 22nd Street." (Exhibit "A", page 3, paragraph 2).

- "Her explanation recounted a common occurrence and the kind of thing that happens very day in traffic enforcement." (Exhibit "A", page 3, paragraph 2).

- "The fact that the Officer may have been annoyed by her defense of her actions does not amount to public annoyance." (Exhibit "A", page 3, paragraph 1).

- "The Officer should have known that he could not shoot the Plaintiff for going through a red light and failing to stop." (Exhibit "A", page 3, paragraph 3).

- "The Officer did not describe any threatening moves on the part of the Plaintiff that would have justified a reasonable belief that she threatened the Officer." (Exhibit "A", page 3, paragraph 3).

7

- "He clearly has <u>not articulated any facts or observations</u> to support this kind of conjecture." (Exhibit "B", page 2, paragraph 1).

- "In my opinion, it is <u>reasonable to assume that his failure to note that he had drawn</u> his firearm was done by design to prevent his CPD superiors from learning that he had threatened to use deadly physical force, etc." (Exhibit "B", page 2, paragraph 2).

- "The testimony of the Officer, which <u>clearly indicated his lack of knowledge of police</u> procedures regarding the differences between an arrest and a stop, and when the Miranda warnings are required, is further evidence that the Officer is either unqualified to be a police officer, etc." (Exhibit "A", page 2, paragraph 3).

These are specific examples of comments and/or opinions set forth in Mr. Signorelli's report, which specifically entail his determinations of credibility of the witnesses and must be precluded. His determinations and credibility are usurping the jury's function to determine factual issues, such as assessing a witness's credibility. Accordingly, Mr. Signorelli must be precluded from presenting any testimony as to the credibility issues of any of the parties or witnesses. This includes other examples set forth in the report, which are not specifically enumerated herein.

In addition to being precluded pursuant to federal law, Mr. Signorelli should not be permitted to testify to credibility issues as the prejudicial effect would outweigh any prohibitive value in violation of Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time or needless presentation of cumulative evidence.").

Mr. Signorelli's credibility determinations would mislead a jury by misrepresenting facts that they are to determine, causing a confusion of issues, and where the probative value of each credibility evidence would be greatly outweighed by the danger of unfair prejudice.

**C.**   **Officer Dewees' State of Mind.**

Mr. Signorelli at Exhibit "B", page 2, paragraph 3 makes an assumption that Officer Dewees' failure to note that he had drawn his firearm was done by design to prevent CPD superiors from learning that he had threatened to use deadly physical force against 18 year old female college student whom he was arresting for traffic violations.  While Mr. Signorelli does not cite to a particular directive that Officer Dewees must note in his arrest report that he removed his service weapon during an arrest, he makes the bold assumption that the Officer, who was mistaken in his interpretation of the directives concerning the reporting of his unholstering of his service weapon, that Officer Dewees was attempting to hide something.  Mr. Signorelli is not qualified to testify as to Dewees' state of mind.  Mr. Signorelli may testify as to his experience with the practices of other police officers but he may not testify as to what was in the mind of Officer Dewees.  See Roberson v. City of Philadelphia, 2001 U.S. Dist. LEXIS 2163 at *20. (Police Liability Expert is without psychological or other relevant background or expertise to testify to the state of mind as to the police officer).

**D.**   **Opinions That Have No Basis in Fact or Law and are Meant Only to Prejudice or Inflame the Jury.**

Mr. Signorelli, gratuitously, puts in a number of throw away opinions meant only to prejudice or inflame a jury.  Specifically in Exhibit "A", page 3, paragraph 4, he opines, "the Officer should have known that he could not shoot the Plaintiff for going through a red light and failing to stop."  Officer Dewees did not shoot Ms. Quagliarello, nor did he fire his gun, nor did he in any way indicate that he was going to shoot the Plaintiff.  This is a classic red herring that has no probative value and should be stricken for its obvious prejudicial impact on a jury.

But not satisfied to slip in this inappropriate editorialization, Mr. Signorelli again at Exhibit "B", page 2, paragraph 1, opines, "Officer Dewees certainly should have known that he could not shoot the Plaintiff for going through a red light and failing to stop." Either Mr. Signorelli did not realize that he had already made such an outrageous assertion in Exhibit "A" or he purposely reiterated this inflammatory statement because of the lack of substance throughout his three reports.

In Exhibit "B", page 1, paragraph 3, Mr. Signorelli finds it necessary to refer to alleged comments made by a City of Chester resident concerning an allegation against Officer Dewees. There is absolutely no reason other than to inflame a jury and to prejudice them against Officer Dewees then for adding in this entire paragraph starting "on December 20, 2007…".

It is important to note that the facts in the Turner case, referenced by Mr. Signorelli in Exhibit "B", are in no way similar to the facts, even the alleged facts, as submitted by Ms. Quagliarello and should be precluded. He references to the Turner v. City of Chester and the Reese v. City of Chester in Exhibit "C" will be subject of a separate Motion in Limine.

It should also be noted that the Turner case never went to trial, was settled by the City of Chester and that Officer Dewees was Dismissed Without Prejudice from the action. Additionally, the Reese matter settled with the City of Chester and Officer Dewees was again Dismissed Without Prejudice. The Settlement Agreements specifically noted that there was no admission of liability and that Officer Dewees and the City of Chester specifically disagreed with the allegations in Plaintiff's Complaint.

Officer Dewees has appealed his two days suspension that he received for conduct unbecoming an officer and using rude or insulting language. The matter is still open before the City of Chester.

Mr. Signorelli is attempting to show that the City of Chester was on notice of alleged conduct by Officer Dewees concerning the use of excessive force in making a traffic stop based on alleged comments made to a pedestrian who was not being arrested.     In order to prove a Monell claim, Plaintiff has to show that the City of Chester either failed to train or supervise Officer Dewees.   Additionally, the City had to be aware and was deliberately indifferent to allegations that were similar to the incident that took place with Ms. Quagliarello.  None of the citizens complaints filed against Officer Dewees involve any use of excessive force by displaying his service weapon or arresting individuals without probable cause.

## V.      CONCLUSION

For the reasons set forth herein, Moving Defendants' Motion in Limine to Preclude Mr. Signorelli from presenting certain opinion evidence should be granted as set forth in the proposed form of Order.

Respectfully submitted,

DEASEY, MAHONEY, VALENTINI & NORTH, LTD.

By: _____
Thomas C. Gallagher, Esquire
Attorney I.D. No.: 27156
103 Chesley Drive, Suite 101
Media, PA  19063
(610) 892-2732 (Phone)
**Attorney for Defendants,
City of Chester and
Officer Joshua Dewees**

Date:   January 18, 2011

11

## CERTIFICATE OF SERVICE

I, Thomas C. Gallagher, Esquire, attorney for Defendants, Officer Joshua Dewees and the City of Chester, hereby certify that a true and correct copy of within Defendants City Of Chester And Police Officer Joshua Dewees' First Motion In Limine To Preclude Opinion Testimony Of Walter Signorelli, Plaintiff's Police Expert was filed electronically and is available for viewing and downloading from the ECF system.  I further certify that I served the foregoing document upon the following individual(s) via e-mail and U.S. mail this 18th day of January, 2011:

Harry J. Oxman, Esquire
Oxman, Goodstadt, Krevitz & Kuritz
3220 Tillman Drive, Suite 201
Bensalem, PA 19020

DEASEY, MAHONEY, VALENTINI & NORTH, LTD.

THOMAS C. GALLAGHER, ESQUIRE

# EXHIBIT "A"

WALTER SIGNORELLI, ESQ.
1992 Commerce Street
Yorktown Heights, New York 10598

July 31, 2010

Oxman Goodstadt Kuritz P.C.
Attorneys at Law
3220 Tillman Drive, Suite 201
Glenview Corporate Center
Bensalem, PA 19020-2032

Re:  Quagliarello v. Dewees and City of Chester
     U.S. District Court, Eastern District of Pennsylvania, Civ. No.09-4870.

1.  Pursuant to plaintiff's request and in accordance with Federal Rules of Civil Procedure, Rule 26 (a) (2), I have prepared this report, which constitutes my initial evaluation and conclusions within a reasonable degree of professional certainty of the actions and procedures employed by members of the City of Chester Police Department (CPD) in connection with this matter.  My fee for preparation is $300 per hour and $2400 per day or part thereof for deposition or trial testimony.  This evaluation is written on the basis of a review of the documents provided and my experience, training, education, and professional background, which are described below. I reserve the right to revise this opinion upon the receipt of additional information.

2.  I am a retired member of the New York City Police Department (NYPD), having served for more than (31) thirty-one years.  During my tenure, I held the ranks of Police Officer, Sergeant, Lieutenant, Captain, Deputy Inspector, and Inspector, and served in numerous capacities, including patrol officer, patrol sergeant, anti-crime sergeant, lieutenant tour commander, Executive Captain of the 46th Precinct, Bronx; Commanding Officer, Manhattan North Public Morals Division; Commanding Officer of the 79th Precinct in Bedford-Stuyvesant, Brooklyn; Commanding Officer, Staff Services Section of the Personnel Bureau; Commanding Officer, 24th Precinct., Upper Manhattan; Executive Officer, Bronx Narcotics Division; Commanding Officer, License Division; Executive Officer, Narcotics Division; Executive Officer, Manhattan North Narcotics Initiative; and Executive Officer, Brooklyn South Detective Division.  All of the foregoing positions entailed conducting, supervising, and training activities pertaining to arrests, investigations, and interviewing witnesses and suspects.

3.  Since my retirement from NYPD, I have taught police science and criminal law courses at John Jay College of Criminal Justice and St. John's University, including

courses in police administration, criminal investigations, constitutional law, and criminal law. I have been retained as a consultant by both plaintiffs and defense in a number of police liability cases, and have testified as a police procedures expert in both State and Federal courts.

## MATERIALS REVIEWED

4. The following is a list of materials pertaining to the incident and individuals involved that I reviewed thus far:

a. Deposition of plaintiff, Julia Quagliarelli, 5/24/10;
b. Complaint, and Responses to Request for Production of Documents;
c. Supplemental Responses to Request for Production of Documents, including CPD police arrest, complaint, incident, and field reports.
d. Affidavit of probable cause by Officer Dewees;
e. Personnel/disciplinary records re: Officer Dewees;
f. Answers to Interrogatories addressed to Officer Dewees;
g. Answers to Interrogatories addressed to City of Chester.

## SUMMARY OF FACTS

5. According to the accounts of Police Officer Joshua Dewees, Chester Police Department, on January 26, 2009, the officer observed the plaintiff, Julia Quagliarello, driving a vehicle in which she proceeded through a red light at the intersection of East 22nd Street and Melrose Avenue. The officer was in a marked police vehicle. He followed the plaintiff's vehicle and activated his siren and overhead lights. He followed plaintiff's vehicle "at a normal rate of speed," and he was able to get the plaintiff to stop at East 14th Street and Chestnut "where she was taken into custody."

6. After the plaintiff was handcuffed and secured in the police vehicle, according to the officer she "started yelling at me and trying to defend her actions."

7. Officer Dewees charged the plaintiff with the following:

a. Fleeing or attempting to elude a police officer;
b. Traffic control signals;
c. Disorderly conduct.

8. According to Ms. Quagliarello, at about 9:30 a.m. on the date of the incident, she was driving to Widener University where she was taking a course. She testified that until she had reached East 14th Street and Chestnut, she had not seen the police car behind her and had not heard the siren because "I had my music loud." She testified that after she realized the police officer was pulling her over she drove to "a spot where he could pull me over and not block traffic." The police officer approached her with his gun drawn, ordered her out of the car, and arrested her.

## OPINION

9. In my opinion, it was a violation of the standards of proper police procedure for Officer Dewees to have arrested the plaintiff for fleeing or attempting to elude a

police officer and for disorderly conduct. Police officers are trained that to make a lawful
arrest they must have probable cause, and they are trained that probable cause consists of
facts and circumstances that would lead a reasonable person to conclude that the person
to be arrested committed, was committing, or was going to commit a crime. The officer
has not alleged facts that would meet that standard. As indicated by the officer's affidavit,
the plaintiff stopped her vehicle, and, although it took her some time to understand that
she had to stop, she did not speed away or engage in any elusive maneuvers. Also,
according to the officer's affidavit, only after the plaintiff "was secured in the rear of my
patrol vehicle" did she yell and defend her actions. The fact that she was already secured
and in custody precluded her from engaging in conduct that caused public inconvenience,
annoyance, or alarm. The fact that the officer may have been annoyed by her defense of
her actions does not amount to public annoyance.

10. Officers are trained or should be trained to understand that drivers often do
not realize that a police officer is pulling them over and it often takes several attempts to
get a driver's attention. In this case, the alleged traffic signal violation occurred at East
22nd Street. According to the affidavit of Officer Dewees, Quagliarello did not look at
him through the rear view mirror until East 20th Street and then not again until East 14th
Street. During this time, she drove at a normal rate of speed and did nothing to elude the
officer. Her explanation recounted a common occurrence and the kind of thing that
happens every day in traffic enforcement. She testified that at East 14th Street, more than
eight blocks from the alleged traffic violation, "I wasn't sure if he was pulling me over,
or if he was trying to get around me, or what he was doing because I didn't understand
why he would be pulling me over." (91:4-8).

11. In my opinion, it was understandable that at East 14th Street Quagliarello did
not relate the police car behind her to the alleged traffic violation at East 22nd Street.
Officer Dewees should have taken this into consideration before arresting her for fleeing
or attempting to elude the police. Furthermore, it was unreasonable and unnecessary to
approach her with this gun drawn in a threatening manner, and his action was a violation
of proper police procedures and practices. Police officers are trained that they may use
force only when necessary and reasonable, and, certainly, the officer should have known
that he could not shoot the plaintiff for going through a red light and failing to stop. The
officer did not describe any threatening moves on the part of the plaintiff that would have
justified a reasonable belief that she threatened the officer.

12. In my opinion, the proper police procedure is this matter would have been for
the officer to advise Quagliarello that she had gone through the traffic signal and that he
was going to issue her a summons. He should have issued a summons for the traffic
violation and let her proceed to school. The arrest and handcuffing of Quagliarello under
these circumstances was a violation of proper police procedure.

Walter Signorelli

# EXHIBIT "B"

P. 2

### WALTER SIGNORELLI, ESQ.
1992 Commerce Street
Yorktown Heights, New York 10598

October 1, 2010

Oxman Goodstadt Kuritz P.C.
Attorneys at Law
3220 Tillman Drive, Suite 201
Glenview Corporate Center
Bensalem, PA 19020-2032

Re: Quagliarello v. Dewees and City of Chester
    U.S. District Court, Eastern District of Pennsylvania, Civ. No.09-4870.

Dear Oxman:

Subsequent to my letter of July 31, 2010, you forwarded to me and I have received the following items:

1. The deposition of Officer Joshua Dewees taken on July 29, 2010;
2. The Chester Pennsylvania Police Department Directive concerning discharge of firearms by police personnel.

In his deposition, Officer Dewees testified that for the eight blocks that he followed Ms. Quagliarello, she drove within the 25mph speed limit and stopped at each of the three stops signs en route. (35:14-23; 36:4-14). He testified that she had not taken any evasive action. (64:2-4). In addition, at Melrose and East 14th Street, she stopped to laugh or converse with two males who were on the street. He further testified that after the plaintiff stopped her vehicle, he exited his vehicle, drew his firearm, and pointed the gun at her vehicle. He approached her vehicle with his gun raised and his arm straight out, and when he got to her door his gun would have been pointed in her direction. (30:9-20; 31:14-25; 32:19-24). Further, the Chester Police Department Directive, (Page 3, Subd. K), in effect at the time of this incident, stated:

> A firearm should be drawn only when an officer believes a potential for serious bodily injury or death to himself or another person exists or, in the case of a fleeing felon, as outlined previously.

In my opinion, it was unreasonable and unnecessary for the officer to approach the plaintiff with this gun drawn in a threatening manner, and his action was a violation of proper police procedures and practices, and a violation of the Chester Police

Department Directive. Police officers are trained that they may use force only when necessary and reasonable. Officer Dewees certainly should have known that he could not shoot the plaintiff for going through a red light and failing to stop. The officer did not describe any threatening moves on the part of the plaintiff that would have justified a reasonable belief that she threatened the officer or anyone else. The explanation he gave as the justification for his drawing his gun can only be described as illusory and irrational conjecture. He explained that in his mind "maybe there's a guy that hopped in her car at the gas station, had a gun to her back and told her to keep driving. At that point, I don't know. So for my safety and hers, it's necessary to draw my firearm." (27:7-11). He clearly has not articulated any facts or observations to support this kind of conjecture. Again, it is my opinion that his conduct was unreasonable and unnecessary, and violated proper police procedures, practices, and his own in effect directive.

I also note that in his testimony Officer Dewees acknowledged that he had an obligation to report in the field report regarding this incident that he had drawn his firearm, yet he failed to do so. (18:6-13; 21:13-18). In my opinion, it is reasonable to assume that his failure to note that he had drawn his firearm was done by design to prevent his CPD superiors from learning that he had threatened to use deadly physical force against the 18 year old female college student whom he was arresting for traffic violations.

I also note that from May 16, 2006 until the date of the incident, at least six civilian complaints were filed regarding the conduct of Officer Dewees. One of the complaints resulted in disciplinary action by the Chester Police Department against the officer. In my opinion, the number of complaints against him in a relatively short period of time should have alerted the Chester Police Department supervisors to closely monitor his conduct and to examine his knowledge of proper police procedures and practices. The testimony of the officer, which clearly indicated his lack of knowledge of police procedures regarding the differences between an arrest and a stop, and when the *Miranda* warnings are required (74:3-12; 75:23-25; 76:2-6), is further evidence that the officer is either unqualified to be a police officer or the Chester Police Department has failed to properly train the officer in the requirements of proper police performance, and has failed to monitor his conduct.

Again, in my opinion, the proper police procedure is this matter would have been for the officer to advise Ms. Quagliarello that she had gone through the traffic signal, and that he was going to issue her a summons. He should have issued a summons for the traffic violation, as I previously stated, and let her proceed to school. His conduct in drawing and pointing his weapon, arresting and handcuffing Ms. Quagliarello, under the circumstances was a clear violation of proper police procedure.

Walter Signorelli

# EXHIBIT "C"

WALTER SIGNORELLI, ESQ.
1992 Commerce Street
Yorktown Heights, New York 10598

October 18, 2010

Oxman Goodstadt Kuritz P.C.
Attorneys at Law
3220 Tillman Drive, Suite 201
Glenview Corporate Center
Bensalem, PA 19020-2032

Re:  Quagliarello v. Dewees and City of Chester
     U.S. District Court, Eastern District of Pennsylvania, Civ. No.09-4870.

Dear Oxman:

     This report supplements my prior reports regarding the January 26, 2009 arrest by
Police Officer Joshua Dewees, Chester Police Department, of Ms. Julia Quagliarello.
Subsequent to my report of October 1, 2010, you forwarded to me and I have received the
following items:

    1.    The deposition of Chief Deputy Darren Alston, taken September 3, 2010;
    2.    Records from personnel file of Officer Joshua Dewees, including civilian
        complaints and disciplinary suspension notice;
    3.    Civil action complaint re: Turner v. Dewees;
    4.    Civil action complaint re: Reese v. Dewees.

     The above civilian complaints and/or lawsuits filed against Officer Dewees
contain several complaints of improper police conduct by the officer. Included among the
complaints are the following allegations:

    a. On December 20, 2007, when the officer was assigned to handle a
vehicle accident, he shouted at a group of people, "Get your black asses out of the
parking lot." When Pastor Charles Weatherly asked the officer for his badge
number, the officer said, "I'm sick of your mouth." Also, the officer unnecessarily
arrested Gerald Turner for a comment Mr. Turner made that the officer
considered threatening, to wit: "I was lucky that he wasn't from Chester."
Another witness (Brice) recounted the Turner's statement somewhat differently—
Turner "began to walk away saying to himself that he was glad that he did not live

in Chester and that's when the officer grabbed Jerry's arm and handcuffed him and put him in the car."

    b. On January 15, 2007, the officer arrested Ms. Rickie Reese, a 14-year-old, for failure to disperse when the officer ordered her to do so. Ms. Reese had been sitting on a stoop and the officer allegedly "exited his patrol car, and without warning or justification, perpetrated an illegal assault upon the plaintiff by striking her about her body with an ASP baton causing a severe bruise to her right arm."

The December 20, 2007 incident was investigated by the Chester Police Department, and the officer was found in violation of Conduct Unbecoming an Officer and Using rude or insulting language or conduct offensive to the public. The penalty imposed was a two-day suspension from duty.

    Chief Deputy Darren Alston, Chester Police Department, testified during his deposition regarding the department's procedures for investigating civilian complaints against officers. He testified that the department assigns a patrol supervisor of the subject police officer to investigate the complaint (18:3). Also, he testified that the department's investigative practice does not allow consideration of prior complaints in the determination of the current complaint under investigation. In answer to a related question, he testified, "We may, yes, review some of them. But does that have any bearing on that independent investigation. It should not, no."(26:9-12). He also testified in response to the same question, "I will investigate the complaint as it stands."(46:21-22).

    In my opinion, the department's practice of allowing supervisors who have a working relationship with the subject officer to investigate serious complaints against the officer violates the accepted standards of proper police procedure and practice. Objectivity is an essential requirement for an investigator, and often the findings of an investigation are premised on the credibility attributed to the officer and the complainant. Some investigating supervisors who have a working relationship with the subject officer are likely to show favoritism toward the officer, and, thereby, improperly influence the investigation. An independent investigator should be assigned to serious complaints.

    Also, the practice of not considering prior complaints against an officer in the determination of the current complaint under investigation is a violation of proper police procedure and practice. Administrative investigations are not criminal prosecutions wherein prior crimes should not ordinarily be considered as proof of a current charge. Administrative investigations should consider prior allegations against an officer because information regarding the officer's habits or patterns of behavior might affect the determination of the current matter.

    Moreover, for the purposes of administrative training, supervision, and discipline, a police department must monitor an officer's overall conduct, and must implement preventive measures to ensure that its officers are conducting themselves properly. In this case, the allegations against Officer Dewees prior to January 26, 2009 involving his conduct toward Ms. Reese, Mr. Turner, Pastor Weatherly, and others should have alerted the Chester Police Department supervisors to closely monitor his conduct and to examine his fitness for assignment to enforcement duties. The two-day suspension was an

inadequate penalty for the improper conduct, and the improper civilian complaint investigative procedures employed by the department set a tone of supervisory indifference to the proper performance of police duties. In my opinion, the Chester Police Department failed to properly train, supervise, or discipline the officer in the requirements of proper police performance, and this failure led to the unlawful treatment of the plaintiff, Ms. Quagliarello.

Walter Signorelli