**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JULIA QUAGLIARELLO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO.  09-4870 |
| OFFICER JOSHUA DEWEES, et al. | : | |

**MEMORANDUM RE: MOTIONS IN LIMINE**

**Baylson, J.**                                                                         **July 20, 2011**

## I.      Introduction

Currently pending before the Court in this action pursuant to 42 U.S.C. § 1983 and state law are the parties' cross-motions in limine to exclude certain evidence at trial.  Defendants filed the following three motions: 1) a Motion in Limine to Preclude Opinion Testimony of Walter Signorelli, Plaintiff's Police Expert; 2) a Motion in Limine to Preclude Evidence of Pre-Incident Lawsuits and Settlements; and 3) a Motion in Limine to Preclude Plaintiff from Offering Evidence at Trial of Citizen Complaints filed Against Police Officer Dewees and Prior Disciplinary Records.

Plaintiff filed a Motion to Preclude Introduction of Plaintiff's Plea of Guilty in State Criminal Proceedings and to Preclude Testimony from Defendants' Witnesses Anna Marie Murphy, Esquire, Anthony Amoroso, Esquire, Jay Mettera, Esquire, Sam Yim, Esquire and Donna Gorbey on June 1, 2011.

The Court has reviewed the parties' motions and responses in opposition, and held oral argument on pending motions on May 24, 2011.  Defendants' Motion in Limine to Preclude Opinion Testimony of Walter Signorelli (ECF No. 25) will be granted in part and denied in part.

-1-

The Court will reserve decision on Defendants' Motions in Limine to Preclude Evidence of Pre-Incident Lawsuits and Settlements (ECF No. 30) and to Preclude Evidence of Citizen Complaints filed Against Police Officer Dewees and Prior Disciplinary Records (ECF No. 31) until trial. Plaintiff's Motion to Preclude Introduction of Plaintiff's Plea of Guilty in State Criminal Proceedings and to Preclude Testimony from Murphy, Amoroso, Mettera, Yim, and Gorbey (ECF No. 37) will be granted.

## II.    Factual and Procedural History

The case arises out of an incident that occurred on the morning of January 29, 2009, when Plaintiff Julia Quagliarello ("Plaintiff"), then an 18-year-old student, was driving to Widener University in Chester, PA.   Compl. ¶¶ 8-9 (ECF No. 1).  The Complaint alleges that Plaintiff made a left-hand turn from East 22nd Street onto Melrose Avenue and drove approximately four to six blocks when she saw a police vehicle with flashing lights behind her.  Compl. ¶¶ 10-11. Plaintiff pulled over her vehicle at the intersection of East 14th Street and Melrose Avenues. Compl. ¶ 12.   Chester Police Officer Joshua Dewees ("Officer Dewees") exited the police vehicle with gun drawn, ordered Plaintiff to get out of the car, and Plaintiff complied.  Compl. ¶¶ 13-14.  Officer Dewees forcibly handcuffed Plaintiff and took her to the Chester Police Department, where she was charged with fleeing or attempting to elude a police officer and disorderly conduct, and held for three hours.  Compl. ¶¶ 15-17.  Following a hearing on July 8, 2009 in the Court of Common Pleas, Delaware County, all charges against Plaintiff were withdrawn.  Compl. ¶ 18.

Plaintiff alleged the following claims against Officer Dewees and the City of Chester (collectively, "Defendants"): violation of her Fourth Amendment right to be secure in one's

person (Count I); false arrest and false imprisonment (Count II); deprivation of Fourth and

Fourteenth Amendment Rights (Count III); negligent failure to train and supervise (Count IV,

against City of Chester only); assault and battery (Count V, against Officer Dewees only);

malicious prosecution (Count VI); and intentional infliction of emotional distress (Count VII).

No dispositive motions were filed in this case.

**III.    Defendants' Motion in Limine to Preclude Opinion Testimony of Walter Signorelli, Plaintiff's Police Expert (ECF No. 25)**

Plaintiff's police expert Walter Signorelli ("Signorelli") filed reports in this case on July

31, 2010 (Ex. A to Defs.' Mot. Limine), October 1, 2010 (Ex. B to Defs.' Mot. Limine), and

October 18, 2010 (Ex. C to Defs.' Mot. Limine).  Defendants move to preclude Signorelli from

testifying to or otherwise presenting evidence of opinions that fall into four categories: 1)

opinions that embrace ultimate legal issues; 2) opinions as to credibility of witnesses; 3) opinions

as to Officer Dewees's state of mind; and 4) opinions that have no basis in fact or law and will

prejudice or inflame the jury.  The Court examines each of these issues below.

**A.    Ultimate Legal Issues**

Defendants argue that Signorelli offers opinions embracing the ultimate legal issues in the

case, which intrude on the role of the jury and should be excluded under Fed. R. Evid. 704(a).

These opinions include whether the police had probable cause to stop and arrest Plaintiff,

whether the police used unreasonable and unnecessary force, whether Officer Dewees acted in a

reasonable or necessary manner, whether the City of Chester was indifferent to Plaintiff, and

whether Plaintiff's actions were a "public annoyance."  Plaintiff, in her response (ECF No. 41),

contends that Signorelli's statements are descriptive and not intended to have legal import.

Federal Rule of Evidence 704(a) provides that, in general, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  "Rule 704 of the Federal Rules of Evidence 'provides that opinion testimony is not objectionable because it embraces an ultimate issue to be decided.'"  United States v. Roman, 121 F.3d 136, 141 (3d Cir. 1997) (quoting United States v. Theodoropoulos, 866 F.2d 587, 591 (3d Cir. 1989)).  However, such testimony can be excluded if it is not "otherwise admissible."  Fed. R. Evid. 704(a).  As the Rules Advisory Committee explained, "[t]he abolition of the ultimate issue rule does not lower the bars so as to admit all opinions," because the expert testimony must be helpful to the trier of fact and not waste time pursuant to Rules 701, 702, and 403.  Fed. R. Civ. P. 704 Advisory Committee's Note.  Collectively these rules of evidence "afford ample assurances against the admission of opinions which would merely tell the jury what result to reach," and require the court to "exclude opinions phrased in terms of inadequately explored legal criteria."  Id.  An expert's "opinion on a question of law" is not admissible.  Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Plan & Trust Agreement, 812 F. Supp. 1376, 1378 (E.D. Pa. 1992) (Huyett, J.) (citing 1 McCormick on Evidence, § 12, at 50 (John W. Strong ed., 4th ed. 1992)).

Defendants cite Burger v. Mays, 176 F.R.D. 153 (E.D. Pa. 1997) (Van Antwerpen, J.) for the proposition that the court should exclude an expert's "testimony that the Defendant's use of force was unreasonable under the circumstances or that the Defendant unreasonably seized the Plaintiff."  Id. at 157.  In Burger, the plaintiff in a civil rights action against an arresting officer sought to call a criminologist as an expert to testify that the officer did not follow proper police procedure in apprehending the plaintiff, and that the officer's use of force was unreasonable.  Id.

-4-

at 156.  The court found that the expert's testimony regarding police procedures was "relevant to

the jury's determination that the Defendant unlawfully seized and assaulted the Plaintiff" and did

not "intrude upon the jury's role to determine the ultimate issues in this case," and thus was

admissible.  Id. at 156-57.  However, the court distinguished the expert's testimony regarding the

unreasonableness of the force used in the seizure, finding that the opinion "would be instructing

the jury what result to reach and would be expressing a legal conclusion."  Id. at 157 (citing Hygh

v. Jacobs, 961 F.2d 359, 364 (2d Cir. 1992)).  The testimony regarding the reasonableness of the

defendant's use of force was not admissible.  Id.

Similarly, in Tschappat v. Groff, Civ. A. No. 3:CV-01-2279, 2004 WL 5509087 (M.D.

Pa. June 2, 2004) (Blewitt, M.J.), the court held that a police expert "should be allowed to testify

as to what proper police procedures are in apprehending a suspect and whether Defendant Groff

failed to follow proper police procedures," and also "to the prevailing use of force standards,"

which were relevant to the jury's determination whether the officer unlawfully seized and

assaulted the plaintiff.  Id. at *3.  However, the expert was not permitted "to testify that

Defendant Groff unreasonably seized the Plaintiff or that Defendant Groff's conduct was

unreasonable under the circumstances," because such testimony "would intrude upon the jury's

function to decide one of the ultimate issues in this case" and "impermissibly expresse[d] legal

conclusions."  Id.  See also Berry v. City of Detroit, 25 F.3d 1342, 1353-54 (6th Cir. 1994)

(testimony by a purported police expert that a city's failure to discipline its officers for using

unwarranted deadly force constituted "deliberate indifference" was an inadmissible legal

conclusion); Whitmill v. City of Philadelphia, 29 F. Supp. 2d 241, 246 (E.D. Pa. 1998) (Hart,

M.J.) (police expert was not permitted to offer an opinion on the legality of the plaintiff's seizure

because the issue "was a matter for the jury to decide after proper instruction from the court" and

the expert testimony "would have usurped the role of the court and the jury").

Accordingly, the Court will grant Defendants' motion to preclude Signorelli's opinions as

to ultimate legal conclusions, including whether Officer Dewees used "unreasonable" force,

whether Dewees had "probable cause," whether the treatment of Plaintiff was "unlawful," and

whether the City showed "indifference."  The Court will admit Signorelli's opinions about police

training, prevailing standards for use of force, and proper police procedures (e.g., "Police

Officers are trained that they may use force only when necessary and reasonable").

### B.     Credibility Determinations

Defendants argue that the Court should exclude Signorelli's testimony about witness's

credibility as impermissible under Fed. R. Evid. 702.[1]  "Evaluation of witness credibility is the

exclusive function of the jury."  Bhaya v. Westinghouse Elec. Corp., 832 F.2d 258, 262 (3d Cir.

1987) (citing Carter v. Duncan-Huggins, Ltd., 727 F.2d 1225, 1234 (D.C. Cir. 1984)).  In

Whitmill v. City of Philadelphia, the district court precluded a police expert's proposed

testimony concerning the credibility of the officer defendants.  Whitmill, 29 F. Supp. 2d at 246-

47.  The court explained that allowing the expert to testify about the officer's credibility "would

have usurped the jury's role in accessing credibility."  Id. at 247.

In this case, Defendant cites eight examples of supposed credibility assessments in

---

[1] Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

Signorelli's expert reports, including the following statements and phrases:  the "alleged traffic signal violation"; Plaintiff's "explanation" of her actions; Officer Dewees "may have been annoyed" by Plaintiff; Officer Dewees "should have known that he could not shoot the Plaintiff for going through a red light and failing to stop";[2] Officer Dewees "did not describe any threatening moves" by Plaintiff; Officer Dewees "has not articulated any facts or observations to support his conjecture"; "it is reasonable to assume that [Officer Dewees's] failure to note that he had drawn his firearm was done by design," and Officer Dewees "clearly indicated his lack of knowledge of police procedures regarding the differences between an arrest and a stop, and when the Miranda warnings are required."  Defs.' Mot. Limine at 7-8.

Plaintiff contends that these statements are not credibility assessments, and the Court somewhat agrees.  The Court will preclude as an improper credibility assessment any opinions as to reasonableness, why an officer acted or failed to act, and the statement that Officer Dewees "has not articulated any facts or observations to support his conjecture."  The remainder of the statements reviewed in this section will not be precluded as credibility determinations.

### C.    Officer Dewees's State of Mind

Defendants argue that Signorelli is not qualified to testify about Officer Dewees's state of mind.  Specifically, Defendants move to preclude Signorelli from testifying that Officer Dewees intentionally did not write in his arrest report that he removed his service weapon because he wanted to prevent his superiors from learning he had done so.  Plaintiff contends that an expert may opine why a police officer took a certain action, but provides no supporting legal citations.

---

[2] This statement is unduly prejudicial and will be excluded under Rule 403, as discussed below.

The Third Circuit has held that Federal Rule of Evidence 702 has "two major requirements": 1) "the proffered 'expert' must be qualified to express an expert opinion," based on the expert's "'knowledge, skills, and training,'" and 2) "the proffered expert opinion must be reliable." In re TMI Litig.,193 F.3d 613, 664 (3d Cir. 1999) (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)).  Defendants cite Roberson v. City of Philadelphia, No. Civ. A. 99-3574, 2001 WL 210294, at *5 n.12 (E.D. Pa. 2001) (Shapiro, J.) for the proposition that a police liability expert should be precluded from testifying about an officer's state of mind because the expert is not qualified in that field.  See also Robinson v. Hartzell Propeller Inc.,326 F. Supp. 2d 631, 648 (E.D. Pa. 2004) (DuBois, J.) (metallurgy and FAA experts were not qualified to testify as to the state of mind of defendant's employees).

Here, Plaintiff has not offered Signorelli as an expert with knowledge, skills, and training in assessing state of mind, and it is doubtful any expert could testify as to state of mind. Therefore, Defendants' motion will be granted with respect to precluding Signorelli's opinions as to Officer Dewees's state of mind.

### D.     Opinions with no basis in fact or law meant only to prejudice or inflame the jury

Defendants contend that certain opinions in Signorelli's report are meant only to inflame or prejudice the jury.  Specifically, Defendants move to preclude 1) the statement that "the Officer should have known that he could not shoot the Plaintiff for going through a red light and failing to stop"; and 2) allegations against Officer Dewees raised in previous cases filed against the City of Chester.

Under Fed. R. Evid. 404(b), evidence of prior bad acts are not admissible to show

conformity therewith, but may be admissible for other purposes, such as proof of knowledge. Beck v. City of Pittsburgh, 89 F.3d 966, 973 (3d Cir. 1996). In United States v. Green, 617 F.3d 233 (3d Cir. 2010), the Third Circuit held that "other act" evidence is admissible under Rule 404(b) if it (1) has a proper evidentiary purpose; (2) is relevant; (3) satisfies Rule 403; and (4) is accompanied by a requested limiting instruction as to the purpose for which the jury may consider the evidence. Id. at 249-50 (citing United States v. Butch, 256 F.3d 171, 175 (3d Cir. 2001)). Under Fed. R. Evid. 403, evidence that is otherwise relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Here, the Court will preclude Signorelli from testifying that "the Officer should have known that he could not shoot the Plaintiff." The statement is inflammatory, unduly prejudicial, and has no relationship to the facts of the case. Signorelli may testify that it would have been improper procedure to shoot.

With respect to statements regarding prior complaints and allegations against Officer Dewees, Plaintiff contends that these opinions should be admissible against the City of Chester as to claims pursuant to Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978) (municipality may be held liable under 42 U.S.C. § 1983 for a constitutional violation based on its policy, regulation, decision, or custom). In Beck, the "plaintiff offered in evidence a series of actual written civilian complaints of similar nature, most of them before and some after the Beck incident, containing specific information pertaining to the use of excessive force and verbal abuse by Officer Williams," in support of the plaintiff's Monell claims. Beck, 89 F.3d at 973.

The Third Circuit held that "[w]ithout more, these written complaints were sufficient for a reasonable jury to infer that the Chief of Police of Pittsburgh and his department knew, or should have known, of Officer Williams's violent behavior in arresting citizens. . ." Id.

Here, the prior complaints are not admissible against the individual officer because they would tend to show propensity and are unduly prejudicial.  Fed. R. Evid. 404(b), 403.  The Court may permit evidence of the prior complaints as proof of knowledge by the City of Chester with respect to the Monell claim.  The Court will withhold ruling, however, until the evidence is introduced, because admissibility will depend on the nature of the evidence and the manner in which the proof is offered.  If the evidence is admitted, the Court will instruct the jury to consider the evidence only as it relates to the City of Chester.

### III.    Defendants' Motions in Limine to Preclude Evidence of Pre-Incident Lawsuits and Settlements (ECF No. 30) and to Preclude Plaintiff from Offering Evidence at Trial of Citizen Complaints filed Against Police Officer Dewees and Prior Disciplinary Records  (ECF No. 31)

Defendants also filed motions in limine to preclude all testimony and evidence of pre-incident lawsuits and settlements in Turner v. Chester, and Reese v. Chester, citizen complaints against Officer Dewees, and Officer Dewees's prior disciplinary record.  Defendants move to exclude this evidence as not relevant under Fed. R. Evid. 401 and 402; as inadmissible prior acts under Fed. R. Evid. 404(b); as confusing and a waste of time under Fed. R. Evid. 403; and as inadmissible hearsay, because the cases did not have full hearings on the merits, under Fed. R. Evid. 801-804.

Under Rule 404(b), an officer's disciplinary records are not admissible "if offered to prove a disposition to violence on the part of [the defendant] Officer," but may be admissible to

show an officer's intent to use violence. West v. City of Philadelphia, Civ. A. No. 86-7487, 1988 WL 21955, at *1 (E.D. Pa. Feb. 29, 1988) (McGlynn, J.). In West, the court held that the disciplinary record, which contained two remote off-duty incidents and an unsubstantiated complaint for which the officer had been exonerated, was not relevant under Rule 401, and excluded the evidence. Id. at *3. See also Whichard v. Baylor, No. Civ. A. 01-CV-148, 2004 WL 1490360, at *2-3 (E.D. Pa. July 1, 2004) (Kauffman, J.) (excluding evidence of prior bad acts by prison officials for the purpose of proving that officials intended to cause harm in this case, because "[t]he risk is too high that the jury, regardless of how well instructed, would conclude that, because these officers had used improper force on a prisoner before, they were more likely to have done so here"); Thompson v. Mancuso, No. 08-3638, 2009 WL 2616713, at *5 (E.D. Pa. Aug. 25, 2009) (Restrepo, J.) (excluding incidents of excessive force by officers where "the facts underlying all three incidents are not sufficiently similar to show that the Defendants acted pursuant to any unique or distinct modus operandi").

By contrast, in Beck v. City of Pittsburgh, 89 F.3d 966, 969 (3d Cir. 1996), the plaintiff "introduced reports of specific civilian complaints against [the defendant officer] for use of excessive force," none of which resulted in disciplining the officer. The plaintiff asserted that the City was liable because the officer "exhibited a pattern of violent and inappropriate behavior, with five complaints of excessive use of force in less than five years." Id. at 972. The Third Circuit held that these incidents were admissible against the City under Rule 404(b) for the purpose of "proof of knowledge" of the officer's inappropriate behavior. Id. at 973.

Defendants also move to preclude evidence of the settlements reached in Turner and Reese pursuant to Fed. R. Evid. 408. Under Rule 408, evidence of negotiations or agreements in

-11-

compromise of a claim are inadmissible to prove liability for the claim.  Fed. R. Evid. 408; see

Affiliated Mfrs., Inc. v. Aluminum Co. of Am., 56 F.3d 521, 526 (3d Cir. 1995) ("The

application of the rule is limited to evidence concerning settlement or compromise of a claim,

where the evidence is offered to establish liability, or the validity or amount of the claim.");

McShain, Inc. v. Cessna Aircraft Co., 563 F.2d 632, 635 (3d Cir. 1977) (holding that the district

court did not err in admitting the settlement release for the purpose of impeaching a witness).

      Here, the settlements that Defendants seek to exclude relate to other cases, not Plaintiff's

claims on trial.  Therefore, Rule 408 does not preclude evidence of the settlements, though the

evidence may be inadmissible under another evidentiary rule.

      The Court will withhold ruling on these motions until Plaintiff seeks to introduce the

evidence at trial.  Evidence of Officer Dewees's disciplinary record will not be admissible

against him to show propensity and because it is unduly prejudicial, unless Plaintiff can show a

limited purpose under Fed. R. Evid. 404(b).  However, the prior complaints and cases may be

admissible against the City of Chester.  Admissibility will turn on both the nature of the

evidence, including how long ago the complaints were filed and the similarity of their subject

matter to these facts, and the purpose for which the evidence is offered, such as whether it tends

to show that the City of Chester was on notice of Officer Dewees's conduct.  The Court will

assess these issues at trial.

**IV.**    **Plaintiff's Motion to Preclude Introduction of Plaintiff's Plea of Guilty in State
Criminal Proceedings and to Preclude Testimony from Defendants' Witnesses Anna
Marie Murphy, Esquire, Anthony Amoroso, Esquire, Jay Mettera, Esquire, Sam
Yim, Esquire and Donna Gorbey (ECF No. 37)**

      Plaintiff moves pursuant to Fed. R. Evid. 410 and attorney-client privilege to preclude the

testimony, evidence, and questions relating to her plea of guilty and her plea withdrawal in state

court, including testimony of Plaintiff's attorney Anna Marie Murphy, Plaintiff's neighbor and

Murphy's employee, Donna Gorbey a.k.a. Donna Peters ("Gorbey"),[3] and three Assistant District

Attorneys involved in discussions of Plaintiff's plea agreement, Anthony Amoroso, Esq., Sam

Yim, Esq., and Jay Mettera, Esq.

### A.     Facts Concerning State Court Criminal Proceedings

After Officer Dewees arrested Plaintiff and took her to Chester Police station, Plaintiff

was charged with fleeing and evading a police officer, disorderly conduct, and disregard of the

traffic signal.  Pl.'s Mot. Limine ¶ 4.  Plaintiff through her parents retained Anna Marie Murphy,

Esq., after Gorbey, Plaintiff's neighbor and Murphy's employee, learned of Plaintiff's arrest.

Pl.'s Mot. Limine ¶ 5. Plaintiff pled guilty to disorderly conduct and a traffic violation at a

hearing before Magistrate Judge Blythe on March 23, 2009.  Pl.'s Mot. Limine ¶ 6.  Plaintiff later

filed an appeal to withdraw her guilty plea, which Delaware County Court of Common Pleas

Judge Burr approved on July 8, 2009.  Pl.'s Mot. Limine ¶ 6.  After withdrawing her plea of

guilty, Plaintiff was not charged criminally with reference to the January 29, 2009 incident.  Pl.'s

Mot. Limine ¶ 9.

### B.     Plaintiff's Withdrawn Guilty Plea

Plaintiff contends that any evidence of her withdrawn guilty plea and discussions with the

Assistant District Attorneys regarding her withdrawn guilty plea is inadmissible pursuant to

Federal Rule of Evidence 410.  The Rule states:

---

[3] Defendants state that Donna Peters was misidentified by Plaintiff as "Donna Gorbey."
Defs.' Resp. in Opp'n to Pl.'s Mot. Limine at 1. Plaintiff also states that Gorbey was Murphy's
secretary, and Defendants state Gorbey was Murphy's billing clerk.

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
> (1) a plea of guilty which was later withdrawn;
> (2) a plea of nolo contendere;
> (3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or
> (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

Fed. R. Evid. 410.  For their part, Defendants contend that Rule 410 should not apply because Plaintiff has brought a malicious prosecution claim, for which she must establish that the Defendants initiated the proceeding without probable cause and that the criminal proceeding was resolved in her favor.[4]

The parties' contentions regarding Rule 410 relate to the doctrine of collateral estoppel, discussed by the Supreme Court in the seminal case <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).[5] In <u>Heck</u>, a state prisoner brought suit for damages pursuant to 42 U.S.C. § 1983 to challenge the constitutionality of his conviction.  <u>Id.</u> at 478-79.  The Supreme Court analogized the prisoner's

---

[4] "To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  <u>McKenna v. City of Philadelphia</u>,582 F.3d 447, 461 (3d Cir. 2009) (citing <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003)).

[5] "Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties."  <u>Kremer v. Chem. Constr. Corp.</u>, 456 U.S. 461, 467 n.6 (1982) (citation omitted).

claim to a common law cause of action for malicious prosecution, an element of which is "termination of the prior criminal proceeding in favor of the accused." Id. at 484. The purpose of requiring proof of favorable termination of the proceedings is to avoid litigating the guilt of the accused in the civil case, which could result in a conflicting outcome, and to prevent collateral attack on a criminal conviction via civil suit. Id. (citations omitted). Applying these principles to the Section 1983 claim, the Supreme Court held:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 487. Accord Torres v. McLaughlin, 163 F.3d 169, 173 (3d Cir. 1998) ("We read Heck to mean that if a section 1983 plaintiff seeks to recover for an unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render the conviction or sentence unlawful, the plaintiff must prove that the conviction or sentence has been reverse, expunged, or declared invalid.").

Following Heck, courts held that a Section 1983 plaintiff cannot use Rule 410 to prevent the introduction of evidence of a plea of no contest in the civil rights action. In Walker v. Schaeffer, 854 F.2d 138 (6th Cir. 1988), the plaintiffs sued two police officers for false arrest, detention, and imprisonment in violation of their constitutional rights pursuant to 42 U.S.C. § 1983. Id. at 139. The police offers had arrested plaintiffs for disorderly conduct and reckless driving, and the plaintiffs had voluntarily entered pleas of nolo contendere in their state court criminal actions. Id. at 139-40. In the criminal proceedings, "each plaintiff, in effect, admitted facts in open court evidencing his guilt, and the state court found both [plaintiffs] guilty of the

offenses charged against them by defendant officers." Id. at 141-42.  The question before the

Sixth Circuit was: "Having voluntarily entered these pleas in state court and having been found

guilty of the charges against them, are plaintiffs now estopped from seeking damages resting

upon claims based upon alleged false arrest and false imprisonment?" Id. at 142.  The Sixth

Circuit answered this question affirmatively, holding "that the pleas in state court made by

defendants and the finding of guilt and imposition of fines by that court estop plaintiffs from now

asserting in federal court that the defendant police officers acted without probable cause." Id.

(reversing the district court's denial of summary judgment to the police officers).

 Significantly, the Sixth Circuit determined that Rule 410 did not bar the police officers

from introducing evidence of the plaintiffs' nolo contendere pleas in the civil action. Id. at 143.

The court reasoned that "the kind of situation contemplated by Rule 410 [is] the use of a nolo

contendere plea against the pleader in a subsequent civil or criminal action in which he is the

defendant," not a situation where police officers, as civil defendants, use the nolo contendere plea

in their defense against civil liability. Id. See also Shelton v. City of Taylor, 92 F. App'x 178,

183 (6th Cir. 2004) (non-precedential) (rejecting the plaintiff's argument that a no-contest plea

and dismissal of the charge was a favorable outcome for purposes of a malicious prosecution

claim, because the court "declined to allow Rule 410 to become an offensive weapon and thereby

undermine its basic purpose"); Small v. Strain, No. Civ. A. 00-3441, 2002 WL 519804, at *2

(E.D. La. Apr. 2, 2002) (Shushan, M.J.) (rejecting the argument that a "plea of no contest cannot

be used against [a Section 1983 plaintiff] in a civil suit pursuant to Fed. R. Evid. 410").

 The Third Circuit has not ruled on the applicability of Rule 410 in a civil action involving

a malicious prosecution claim.  However, a recent district court case in the Third Circuit rejecting

the offensive use of Rule 410 by a criminal defendant in a civil suit is <u>Domitrovich v. Monaca</u>,

No. 2:08CV1094, 2010 WL 3489137 (W.D. Pa. Sep. 1, 2010) (Cercone, J.).  In <u>Domitrovich</u>,

police arrested the plaintiff for criminal conduct at a neighborhood cookout.  <u>Id.</u> at *1.

Domitrovich was charged in state court with numerous crimes including aggravated assault,

disorderly conduct, and resisting arrest.  <u>Id.</u> at *4.  Domitrovich later entered a plea agreement in

which he agreed to plead nolo contendere to reduced charges.  <u>Id.</u>  At the plea colloquy,

Domitrovich said he understood that "by pleading <u>nolo contendere</u> to simple assault and resisting

arrest, Domitrovich was admitting the facts as presented by the Commonwealth," including that

he struck one of the police officers in the face and torso while resisting arrest.  <u>Id.</u>  Thereafter,

Domitrovich brought a civil rights action against the arresting officers for excessive force, false

arrest, malicious prosecution, and violation of his due process rights.  <u>Id.</u>  In the civil action,

Judge Cercone held that Domitrovich was "collaterally estopped from denying the facts of which

he . . . was accused and which formed the factual basis for the entry of a prior guilty plea,"

including the evidence that he assaulted the police officer.  <u>Id.</u> at *5 (citations omitted).  Because

this evidence supported a finding that the officer had probable cause to make the arrest,

Domitrovich could not pursue the false arrest or malicious prosecution claims.  <u>Id.</u> at *6.

      Judge Cercone also rejected Domitrovich's argument that Rule 410 precluded evidence of

the nolo contendere plea in the civil case.  <u>Id.</u>  Judge Cercone agreed with the Sixth Circuit in

<u>Walker</u> that Rule 410 was not intended to allow a former criminal defendant "'to use the plea

offensively, in order to obtain damages, after having admitted facts which would indicate no civil

liability on the part of the arresting police.'"  <u>Id.</u> (quoting <u>Walker</u>, 854 F.2d at 142-43).

Furthermore, Domitrovich's false arrest and malicious prosecution claims were barred under

Heck, because Domitrovich could not establish the invalidity of his conviction.  Id. (citing Heck, 512 U.S. at 487).

  This Court finds Walker and Domitrovich to be persuasive authority for the proposition that a former criminal defendant cannot use Rule 410 to preclude admission of a nolo contendere plea in a related civil action alleging malicious prosecution.  However, these cases are distinguishable from the instant case, which concerns a withdrawn guilty plea rather than a plea of nolo contendere.  While "a plea of nolo contendere is not an admission of guilt," it "has the same legal consequences as a plea of guilty and results in a conviction."  United States v. Adedoyin, 369 F.3d 337, 344 (3d Cir. 2004) (citations omitted).  "It is well settled that a plea of nolo contendere admits 'every essential element of the offense (that is) well pleaded in the charge.'"  Id. (quoting United States v. Williams, 642 F.2d 136, 138 (5th Cir. 1981).  By contrast, when a defendant withdraws a guilty plea, she is no longer bound by the factual basis underlying the plea.  See United States v. Davis, 617 F.2d 677, 682 n.13, 684 (D.C. Cir. 1979) ("statements made in conjunction with a plea of guilty that is made in open court but . . . later withdrawn . . . are inadmissible" under Fed. R. Crim. P. 11(e)(6), which was "virtually identical to . . . Fed. R. Evid. 410").

  A case illustrating the non-preclusive effect of a withdrawn guilty plea is United States v. Montes, 976 F.2d 235 (5th Cir. 1992).  Montes and his co-defendants agreed to plead guilty to conspiracy to possess with intent to distribute marijuana, and the factual basis of the plea described the amount of marijuana.  Id. at 238.  Montes later withdrew his guilty plea before the sentencing of his co-defendants, and was found guilty of the charge at a jury trial.  Id.  At his sentencing, Montes contended that "the doctrine of collateral estoppel prevented the government

from relitigating, and the district court from redetermining," the relevant amount of marijuana. Id. at 239.  The Fifth Circuit held that "collateral estoppel did not bar the reevaluation of the issue of the amount of marihuana involved in the conspiracy," because Montes had withdrawn his plea before the sentencing of his co-defendants, and the factual basis of the plea had no preclusive effect for him, unlike his co-defendants.  Id. at 240.

In this case, because Plaintiff withdrew her guilty plea, rather than entered a nolo contendere plea, Rule 410 applies.  Defendants are precluded from introducing evidence of Plaintiff's withdrawn guilty plea and discussions with the Assistant District Attorneys about the plea.[6]

### C.      No Waiver of Privilege

Plaintiff contends that Murphy cannot testify as to her conversations with Plaintiff, because any conversations between Plaintiff and her criminal defense attorney are privileged pursuant to Fed. R. Evid. 501.  The attorney-client privilege "is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'"  Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).  Confidential communications are not intended to be disclosed to third persons other that parties who further the provision of professional legal services.  United States v. Moscony, 927 F.2d 742, 752 (3d Cir. 1991).  "The ultimate key to determining confidentiality is intent."  Id. (clients' signing of affidavit in the presence of a third-party did not waive the attorney-client

_____

[6] The Court also rejects Defendants' argument that the criminal proceedings did not resolve in Plaintiff's favor because Defendants intend to reinstate criminal proceedings against her following the civil suit.   The Court considers the record before it, not hypothetical facts.

privilege where the clients intended their communications to be confidential).

Defendants argue that Plaintiff waived the attorney-client privilege because she consulted with Murphy in the presence of third parties, i.e. her parents and Gorbey. Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1424 (3d Cir. 1991) (citing United States v. AT&T, 642 F.2d 1285, 1299 (D.C. Cir. 1980)) ("voluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege").

The Court finds that Plaintiff did not waive the privilege as to discussions where Donna Gorbey and Plaintiff's parents were present.  In Kevlik v. Goldstein, 724 F.2d 844 (1st Cir. 1984), the First Circuit held that the presence of a client's father at the meeting with his attorney did not waive the attorney-client privilege where the client intended that his communications with the attorney were confidential. Id. at 849.  Furthermore, "[t]he presence of a third party will not vitiate the attorney-client privilege if the third party is the attorney's or client's agent or possesses a commonality of interest with the client." In re Grand Jury Investigation, 918 F.2d 374, 386 n.19 (3d Cir. 1990) (citing 8 Wigmore at § 2311); see also Miller v. Haulmark Transport Sys., 104 F.R.D. 442, 445 (E.D. Pa. 1984) (Huyett, J.) ("[T]he privilege is not destroyed when a person other than the lawyer is present at a conversation between an attorney and his or her client if that person is needed to make the conference possible or to assist the attorney in providing legal services.").  Here, Plaintiff's neighbor and parents facilitated Plaintiff's obtaining legal counsel on the day of her arrest.  There is no evidence that Plaintiff intended to waive the attorney-client privilege in her communications with Murphy.  Therefore, the Court grants Plaintiff's motion in limine.

-20-

**V.**     **Conclusion**

For the reasons discussed above, Defendants' Motion in Limine to Preclude Opinion Testimony of Walter Signorelli, Plaintiff's Police Expert will be granted in part and denied in part.  The Court will withhold ruling on Defendants' Motion in Limine to Preclude Evidence of Pre-Incident Lawsuits and Settlements and Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence at Trial of Citizen Complaints filed Against Police Officer Dewees and Prior Disciplinary Records.  Plaintiff's Motion to Preclude Introduction of Plaintiff's Plea of Guilty in State Criminal Proceedings and to Preclude Testimony from Defendants' Witnesses Anna Marie Murphy, Esquire, Anthony Amoroso, Esquire, Jay Mettera, Esquire, Sam Yim, Esquire and Donna Gorbey will be granted.

An appropriate Order follows.

O:\CIVIL 09-10\09-4870 Quagliarello v. Dewees\Quagliarello v. Dewees - Mem MILs.wpd