**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JULIA QUAGLIARELLO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO.  09-4870 |
| OFFICER JOSHUA DEWEES, et al. | : | |

**MEMORANDUM RE: MOTIONS IN LIMINE**

**Baylson, J.**                                                                                                             **August 4, 2011**

## I.    Introduction

This civil rights action arises out of the stop and arrest of Plaintiff Julia Quagliarello ("Plaintiff") by Chester Police Officer Joshua Dewees ("Officer Dewees"), after Plaintiff committed a traffic violation while driving in Chester, Pennsylvania on January 29, 2009.[1] Plaintiff has sued Officer Dewees and the City of Chester (collectively, "Defendants") for violations of her rights under the United States Constitution and Pennsylvania law.

In advance of trial, Plaintiff filed two additional motions in limine.[2] First, Plaintiff moves to preclude Defendants from introducing into evidence photographs of Plaintiff from the social networking sites Facebook and Myspace.  (ECF No. 51)  Second, Plaintiff moves to preclude Defendants from 1) introducing into evidence a videotape reenacting Officer Dewees's pursuit of Plaintiff's vehicle for several blocks before Plaintiff pulled over; and 2) performing a

---

[1] Plaintiff refers to January 29, 2009 as the date of the incident in both her briefs and in the Complaint.  Defendants' briefs refer to January 26, 2009 as the date of the incident.

[2] On July 20, 2011, the Court issued an Order and Memorandum (ECF No. 49/50) resolving all pending motions in limine.

demonstration of a police vehicle's flashing lights, siren, and horn.  (ECF No. 52)

The Court heard oral argument on these motions at a hearing on August 1, 2011.  At a hearing on August 4, 2011, the Court ruled from the bench as follows:

First, if Plaintiff opens the door on direct testimony to her emotional distress following the incident, the Defendants may introduce up to three photographs on cross-examination that are probative of Plaintiff's emotional state, assuming Defendants can show the photographs were taken after the date of the incident and before Plaintiff filed suit.  Plaintiff will then be permitted to introduce up to three photographs on redirect to support her claim of emotional distress.  Defendants may not introduce any text from Plaintiff's social networking webpages.

Second, Defendants may show the jury the portion of the video that depicts the view from the front windshield and the side window.  Defendants must edit the video to eliminate the view from the rear window and the word "reenactment."

Third, Defendants will not be permitted to show the jury a demonstration of a police vehicle's siren, horn, and lights.

This Memorandum supports the Court's rulings.

**II.    The Parties' Contentions**

With respect to the social networking sites, Plaintiff contends the photographs she posted online have no relevance to this litigation and may impute to her a negative character or reputation.  Plaintiff argues the photographs should be precluded pursuant to Fed. R. Evid. 401, 402, 403, and 404.  Defendants contend in their response (ECF No. 56) that Plaintiff put her mental and physical condition in controversy by alleging past and future physical and mental pain, anguish, severe emotional trauma, embarrassment, and humiliation resulting from her

arrest. Defendants assert that photographs, video, posts, and other content on Plaintiff's social media profiles are relevant and material to defending her emotional distress claims. At oral argument, Defendants contended that Plaintiff's photographs on Myspace tend to show that she did not exhibit psychological distress after the incident.

With respect to the videotape and the demonstration of the police vehicle, Plaintiff contends they are inadmissible experiments that do not reconstruct the scene. Plaintiff asserts that the conditions in the video, such as the season, the view from the car windows, and the number of cars parked on the street, differ from the actual incident. Plaintiff also contends that the jury's observation of a police vehicle parked outside of the courthouse with flashing lights and sounding horn and siren would not resemble what Plaintiff saw and heard from her car on the day of the incident. Defendants contend in their response (ECF No. 55) that the video and the demonstration are offered as illustrations rather than reenactments. Defendants argue that the videotape will "bring context and insight that words alone cannot" to Officer Dewees's expected testimony that he followed Plaintiff for eight blocks before she stopped, although there were "numerous turn-outs where she could have stopped." Resp. at 5. Further, Defendants assert that "the police vehicle demonstration is offered to visually and audibly illustrate Officer Dewees' testimony at trial for the jury" that he activated his lights, horn, and siren. Resp. at 6. Defendants contend that the evidence is not prejudicial because Plaintiff can highlight differences between the experiments and the incident during cross-examination.

### III. Legal Standard

Under Federal Rules of Evidence 401 and 402, evidence is "relevant" and generally admissible if it "tend[s] to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.  Evidence is "unfairly prejudicial" if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"; "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish"; or "may cause a jury to base its decision on something other than the established propositions in the case." Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980) (internal citations and quotation marks omitted).  Evidence of character is also generally "not admissible for the purpose of proving action in conformity therewith." Fed. R. Evid. 404(a).

**IV.     Motion to Preclude Social Networking Evidence (ECF No. 51)**

As the use of social media such as Myspace and Facebook has proliferated, so too has the value of these websites as a source of evidence for litigants.  Like any evidence, photographs posted on these websites are subject to the evidentiary rules requiring relevance to the claims at issue, a legitimate purpose, and probity not substantially outweighed by unfair prejudice.  For example, in United States v. Drummond, No. 1:09-cr-00159, 2010 WL 1329059 (M.D. Pa. Mar. 29, 2010) (Kane, C.J.), the court found that photographs posted on Myspace depicting the defendant holding cash were relevant as circumstantial evidence of drug trafficking, but also "pose[d] a significant risk of provoking an emotional reaction from the jury–that he is a drug dealer because he looks like a drug dealer in the photos–, which is likely to outweigh the probative value of him possessing an unknown amount of cash from an unknown source." Id. at

*2. The prosecution likely could present oral testimony probative of the defendant's possession of cash despite having no legitimate income, that would be less prejudicial than the photographs. Id. Judge Kane noted "it [wa]s possible that the relevance of the photos could outweigh any unfair prejudice," but withheld ruling on a motion to preclude the photos until trial. Id. at *2-3.

Photographs from social networking sites cannot be admitted to prove bad character. In United States v. Phaknikone, 605 F.3d 1099 (11th Cir. 2010), the Eleventh Circuit held that photographs posted on the defendant's Myspace profile, including a photograph depicting him in a car with a child in the backseat, while holding a handgun, with his tattoos visible, was "classic evidence of bad character, which was offered by the government to prove only 'action in conformity therewith.'" Id. at 1108-09 (quoting Fed. R. Evid. 404(b)). The jury in the defendant's trial on robbery charges could "infer that, because [the defendant] is willing to publish these kinds of photographs online, under an incendiary alias, he is a gangster who is likely to rob banks," an impermissible inference under Rule 404(b). Id. at 1109. Accordingly, the appellate court held that the district court abused its discretion by admitting the photographs. Id. See also Engman v. City of Ontario, Civ. A. No. EDCV 10–284 CAS, 2011 WL 2463178, at *11 (C.D. Cal. June 20, 2011) (Snyder, J.) (information on plaintiff's Myspace page regarding drinking and his complaints about the government were irrelevant to his claims, and inadmissible under Rule 402). Cf. United States v. Benford, Civ. A. No. 10–12801, 2011 WL 2078645, at *3 (11th Cir. May 26, 2011) (non-precedential) (holding that photographs on Myspace showing the defendant with two of the firearms charged in the indictment were probative of his possession of the weapons, and thus admissible as intrinsic evidence not subject to Rule 404(b)).

Photographs and videotapes may be admissible to show evidence relevant to a plaintiff's

claim for damages for pain and suffering, both physical and emotional.  See, e.g., Robert v. Conti Carriers & Terminals, Inc., 692 F.2d 22, 25 (5th Cir. 1982) (affirming district court's admission of photographs showing the medical condition of plaintiff's hands, which were probative and not unfairly prejudicial with respect to damages on plaintiff's negligence claim); Evan v. Estell, 203 F.R.D.172, 173 (M.D. Pa. 2001) (Mannion, M.J.) (the parties agreed that a video of the plaintiff was "directly relevant to her claim for damages" where "the video surveillance presumably relates to the physical condition, disability and credibility of the plaintiff").

Where a "[p]laintiff has put her mental condition in controversy in seeking damages for emotional distress, [the defendant] has an interest in introducing evidence of other possible causes of this emotional distress."  Blakey v. Cont'l Airlines, Civ. A. No. 93-2194, 1997 WL 1524797, at *13 (D.N.J. Sept. 9, 1997) (Bassler, J.) (denying motion to preclude evidence of plaintiff's affair, a possible source of emotional stress, in plaintiff's sexual harassment lawsuit against her employer, with the intention to "revisit the issue during the trial" "when the allegations are fleshed out by the facts").

Here, Defendants submitted several pages of photographs of Plaintiff from Myspace.[3] These photographs depict Plaintiff, a college student, with her friends, playing with a dog, drinking at a party (including one photo with the caption "Crazy night lol"), and riding a mechanical bull.  There are headings that suggest the photos are divided into groups dated September 5, 2010, February 15, 2010, April 20, 2009, and January 27, 2008, but the date on which any individual photograph was taken is not clear.

---

[3] At the hearing on August 1, 2011, the Court marked the color photos from Myspace Exhibit D-9A for the record.

The Court has determined that some photographs of Plaintiff could be relevant to Plaintiff's claim for emotional distress. If Plaintiff testifies on direct examination regarding her emotional distress after the incident, Defendants may show Plaintiff up to three photographs on cross-examination, provided that Defendants can prove the photographs were taken after the incident occurred and before Plaintiff filed this lawsuit. If Defendants show Plaintiff photographs, Plaintiff may rebut this evidence on re-direct by introducing up to three photographs from the same time period in support of Plaintiff's claim.

## V. Motion to Preclude Video of Chase and Demonstration of Police Vehicle (ECF No. 52)

The Third Circuit "has long recognized the broad latitude of the trial judge in ruling on questions of admissibility," and that the "trial judge may have even greater latitude when dealing with demonstrative evidence per se." United States v. Rockwell, 781 F.2d 985, 987 n.3 (3d Cir. 1986). The standard for admission into evidence is different for a reenactment and an illustration. Reenactments, like experiments, are held to a higher standard. "Experimental evidence is admissible so long as it is relevant and probative, and such evidence has probative value if the conditions of the experiment are identical with or similar to the conditions of the transactions in litigation." Glick v. White Motor Co., 458 F.2d 1287, 1294-95 (3d Cir. 1972) (citing Crown Cork & Seal Co. v. Morton Pharms., Inc., 417 F.2d 921 (6th Cir. 1969)) (affirming the trial court's ruling that proffered experimental evidence was not sufficiently probative to be admissible). "When confronted with photographs, films, and videotapes of experiments or demonstrations that purport to replicate actual events, courts require the party seeking to admit the evidence to prove that the experiment or demonstration was conducted under substantially

similar circumstances as the actual event." Russo v. Mazda Motor Corp., Civ. A. No. 89-7955, 1992 WL 309630, at *2, *3 (E.D. Pa. Oct. 19, 1992) (Huyett, J.) (citing 2 John W. Strong, et al., McCormick on Evidence § 214, at 19-20 (4th ed.1992)) (photographs purporting to replicate an accident were admissible "to demonstrate mechanical principles relative to the vehicle and as a visual summary of the expert's opinion").

On the other hand, evidence that is merely illustrative need not be substantially similar to the incident. "[W]hen a party seeks to introduce photographs, films, and videotapes of experiments or demonstrations, not as a re-creation or representation of how an accident actually happened, but instead to illustrate general principles of physics, for example, courts do not impose a substantial similarity requirement." Russo, 1992 WL 309630, at *2 (citing 2 McCormick on Evidence, supra, § 214, at 20). Any dissimilarities affect the weight rather than the admissibility of the evidence. Id. Nevertheless, a video intended to be a demonstrative exhibit but not a reenactment must meet the evidentiary requirements for admissibility, including Rule 403. See, e.g., Palmer v. Nassan, No. 10-cv-0922, 2011 WL 587982, at *2 (W.D. Pa. Feb. 10, 2011) (Schwab, J.) (excluding videotaped demonstration of tasing in a civil rights suit against a police officer because "(1) this demonstrative evidence is not demonstrative of what happened to Plaintiff on the night in question . . ., (2) this evidence cannot be authenticated, and (3) the little, if any probative value, is grossly outweighed by the prejudicial effect it will have on a jury.").

The Court now evaluates the videotape and the proposed demonstration in this case.

### A.     Video

Defendants' Revised Pre-trial Memorandum (ECF No. 35) lists as a trial exhibit "Video

tape of chase scene from 22nd and Monroe to 14th Street campus bus stop." Although Defendants disclaimed at oral argument and in their response brief that the video is a "reenactment," the word "reenactment" is on the screen as the three-minute video plays. The video actually consists of three videos running simultaneously, which depict the view out of the front windshield, rear windshield, and passenger-side window of a car with similar specifications to the car Plaintiff drove on January 29, 2009. The car follows Plaintiff's route in Chester, PA on the morning of the incident, until the point where Plaintiff pulled over. A police vehicle pursues the car representing Plaintiff's car.

The view out of the front and side windows shows the residential neighborhood in which the incident took place. These views show the street intersections and the areas along the side of the road marked by yellow paint where a car could theoretically pull over. These portions of the video are probative of the defense to Plaintiff's expected testimony that there was no place for her to pull over. As an illustrative demonstration, the video is admissible and any differences in conditions from the day of the incident go to the video's weight rather than its admissibility. These differences can be highlighted on cross-examination.

However, the view from the rear window, showing the police car in pursuit, is confusing and possibly unduly prejudicial to the Plaintiff. Therefore, Defendants must edit the video to eliminate the rear window view and remove the word "reenactment" before showing the video to the jury.

   **B. Police Car Outside the Courthouse**

In Defendants' Revised Pre-trial Memorandum, Defendants "request that the Court permit a jury view of the City of Chester Police Department Patrol vehicle 24-56. The vehicle

will be driven to the James Byrne Federal Courthouse and parked on Market Street or Sixth Street for the jury to observe: (1) the vehicle's flashing lights; and (2) the vehicle's siren, horn, and 'beeping' as activated on January 26, 2009."

The Court holds that this proposed demonstration is not admissible.  Bringing the jury outside the courthouse to listen to and view a police vehicle with its lights and siren activated is neither an experiment under substantially similar conditions as the incident, nor an illustration of a helpful principle that the jury may not understand.  The Court is confident that every juror in the greater Philadelphia area has seen and heard a police vehicle with activated lights and siren.  (The jurors may even see and hear police cars as they travel to and from the courthouse for their jury service.)  The proposed experiment is not probative of any fact of consequence in the litigation, and furthermore, would be a waste of time.  Therefore, the Court will grant Plaintiff's motion to preclude the demonstration of the police vehicle.

## VI.     Conclusion

For the reasons discussed above, the Court will grant in part and deny in part Plaintiff's Motions in Limine.  An appropriate Order follows.

O:\CIVIL 09-10\09-4870 Quagliarello v. Dewees\Quagliarello v. Dewees - Mem Pretrial 080211.wpd